Good morning, Your Honors. Vince Bronco, Federal Defenders, on behalf of Mr. Tolento. Looking at the timeline in this case really helps solidify the sentencing issues. Mr. Tolento had an October 1999 deportation. You're with Federal Defenders, aren't you? Yes. I wonder why they don't put that down here. We usually have it. I'm sorry they didn't. That's not your fault. But I am there. I'll see that you get proper billing next time. Okay. Thank you. October 1999, Mr. Tolento obtained two convictions involving consensual sexual acts with a person under 18. In December of 1999, he was deported. In July 2002, he got two convictions, which we concede are aggravated felonies and crimes of violence. In 2004, there's a reinstatement process where he did not appear in front of an immigration judge and his deportation was reinstated. So based on this timeline, other than the Fifth and Sixth Amendment sentencing issues, the real two questions are, first, whether the government can rely on the 2004 deportation to increase the sentence or reinstatement to increase the sentence. And second, if the reinstatement cannot be relied upon, whether or not the 1999 sex with an individual under the age of 18 is categorically a crime of violence under the guidelines or an aggravated felony. This court has before it right now, an en banc court, the issue of whether or not the reinstatement process is legal or not. So because that issue is before the en banc court, I plan to just discuss whether or not the 1999 convictions are a crime of violence as defined in the guidelines. I see a puzzled look. I'm just you can see that the 02 conviction is a crime of violence. Yes. So that's not even so. There's clearly that is in his history. The 2002. But the thing is, to increase the sentence, either the statutory maximum or to increase under the guidelines, the conviction has to occur before the deportation. And that's why the timeline is so important. So the answer to the question I want to talk about, whether or not sex with a 17-year-old is statutory rape or sexual abuse of the minor, is easy. Because in 38 States. You're looking at 99 convictions. 99 convictions. That's a 99. All right. In 38 States in this country, the age of consent is 17 or below. Meaning in only in 12 States in this country does it prohibit consensual sex with a 17-year-old. Even more so, the age of consent in 32 States is 16. Thus, 18 States across the nation, you can have consensual sex with 17 and 18-year-olds. Thus, when the guidelines use the term statutory rape or sexual abuse of the minor, they had to have had it taken into account what that term is used in most jurisdictions in the United States. Because that is the first step of a Taylor analysis. It looks to how terms are defined in most jurisdictions in the United States and what that term means in the ordinary common meaning. And across this country, quite simply, sex with 16 and 17-year-olds is not criminalized. So it cannot be statutory rape as stated in the guidelines or sexual abuse of a minor because 17 and 18-year-olds in the context of consensual sex are not minors. Further, an evaluation of this Court's case law, all the cases finding either aggravated felonies or crime of violence involve statutes that criminalize sex below the age of 16. So any reliance on cases such as Alvarez-Gutierrez, Ashbery, Granboy's, Pierre Selmarone. How about the 288AB1 offense? Correct. Crime of violence, which they enumerate statutory rape. And I agree. If it's statutory rape under the guidelines, yes, it would qualify. That's not statutory rape, is it? Which one? 288AB1? Can you... 288... Oh, B1? Yeah. No, no, no. The 288B, 288AB1, that's the California... 288AB1. Yes. That is oral copulation with an individual under the age of 18. There's no element of force. It's just a consensual sexual act of oral sex with someone that's 17 or younger. And under a Taylor analysis, you look at the full range of conduct. But it's a sexual abuse of a minor, isn't it? No. It isn't? 288PrinA is. 288aPrinB1 is not. They're two different sections of the California Code. And I agree the 288A, which he was convicted of in 2002, is sexual abuse of a minor. So we're only getting to these questions after the reinstatement procedure. Hopefully this Court declares illegal in Morales Esquerra. Well, okay. Let me go one step further, because yesterday, I don't know if the Court is aware, but held basically that the Oregon statutory rape section is rape as defined as an aggravated felony. And the Oregon statutory rape section is 16 and below. And that case repeatedly, over and over, indicated that it was evaluating the full range of conduct, which means below 16, and interpreting that that statute was rape. So this, again, is an undecided question. And the full range of conduct is broader here because it involves 16- and 17-year-olds under the California statutes. What code section under California law are we talking about? We are talking about specifically 261.5C. All right. And 288.a.b.1. All right. Now, I am told that there is a decision that is published this morning. This morning. This morning. I thought I was current with yesterday. And it is AFRIDI v. Gonzalez, 0476600. And I have the pre-publication report. Which I don't. Which you don't. And I would not disclose to you except the fact that it has been filed this morning. And under the words holding, the panel granted in part a petition for review of the Board of Immigration Appeals decision, finding petitioner removable as an aggravated felon for his 1993 conviction for unlawful sexual intercourse with a minor more than three years younger than he, now California Penal Code 261.5C, and denying withholding of removal and protection under the conviction of torture. Now, that case is this. I don't know precisely what impact it would have on this case. Obviously, I'd have to look at that case. But perhaps they went to the second stage Taylor analysis looking at the judicially noticeable facts to find that the individual, the victim, was 16, 14, 13, you know, younger than 17 or 18. I don't know. If it says that, I think I'll be writing a petition for rehearing. So, anyway, what we have to be careful of is that some of these cases talk about whether or not statutory rape is rape, and that's the case that you referred to just filed the last day or two. Correct. I was on that panel and part of the majority. And then we have to look at whether or not the case involves the issue of whether or not a felony is a violent felony, as is the case in an earlier decision. Actually, yeah. 265A is not a violent felony in that discourse. Then we have to focus on, as we have to in this case, is whether or not this offense amounts to sexual abuse of a minor. Or statutory rape. And I do not. Well, why statutory rape? Because under the guidelines, it's specifically enumerated. But does the government claim that this is statutory rape? They did in the 28J letter. So that's why I'm addressing it also saying because I don't think it hurts my argument because it's not a crime in 38 jurisdictions. I would think that the more simple approach would be to decide whether or not it constitutes sexual abuse of a minor. I would like that. It certainly is a broader concept than rape, at least. I understand that. But I think the bottom line is because you're not a minor sexually in 38 jurisdictions throughout the United States. I hear you. I hear you. Okay. Okay. But he lived in California, and they have different laws, right? But I mean, if you commit a burglary in California of a car, we live in California. But under the Taylor analysis, that's not burglary because in I think it's 35 jurisdictions throughout the United States, it's not burglary. So it's the same concept. Just because California extends its criminal liability does not mean that that's what the guidelines or the Congress meant. How old was he in 99? 99, he was 21. Okay. And there are no judicially noticeable facts in this case. Those facts just come from PSR, from looking at the terms of the circumstances of the arrest. All right. Thank you. We give you a copy of this. I don't have. All I have is the pre-sentence report. I do not have the copy of the opinion. Well, you can go to the clerk's office. Why don't you go over there and get it, and then come back here, and we'll get this thing over with. All right? Do you know about the case? No, not the one from this morning, Your Honor. You're the U.S. Attorney. You're the government. You're supposed to know everything. I came right from my hotel to this courtroom, Your Honor. You're not wired or anything? Unfortunately not. You're Blackberry. I have one of those. Well, all right. Why don't we do that? Just go over to the librarian over here. We have a nice library. It's case number 0476600. It's filed 4406. And the panel was Judge Hugg, Allerton was the author, and Judge McKeown. Now, Your Honor, I don't mind doing that, but I believe the government has a very strong argument that that is not even necessary to resolve this case. And I don't know if you'd rather hear that now or if you would rather hear that later. Let's hear it a little later, yeah. Later, okay. At least give the defense counsel a chance to look at the case. The Efride case can be distinguished because they were taken in an immigration context. They expressly stated that they're giving deference to the BIA's definition of sexual abuse with a minor. And so because this is in the criminal context and this court must take a fresh, tailored approach, not giving any deference to whatever definition that the BIA had made, you really need to look at the entire definition, sexual abuse of a minor, and whether or not that in Black's Law Dictionary they put 18 as a minor. If you look in the context of sex, it is clear. In 38 States, a 17-year-old can consensually have sex and it's not abuse. May it please the Court, Mark Rahe for the United States. Your Honors, after reviewing the case that came out this morning, I think it is fatal to defendant's claim that his 1999 conviction under 261.5C of the California Penal Code. I think the clock has to be reset. The clock needs to be reset? Oh. That's all right. It's 10. 10? Okay. Sorry. Okay. There you go. That's all right. You didn't get any. I appreciate it. All right. But in Afridi, I understand defense counsel is trying to distinguish that case basically because of BIA deference. I don't think that's not a controlling distinction, Your Honor. And obviously, I don't know the extent to which Your Honors are having a very limited opportunity to read this case, but the same argument was at issue there that is being advanced by defense counsel here, and that's namely that a statutory rape or, excuse me, sexual abuse of a minor, where a particular State defines minor, not at the 16-year-old limit, but at the 18-year-old limit, that that somehow cannot qualify as an aggravated felony, Ninth Circuit in this case has expressly rejected that argument. And even though it does give deference to the BIA's definition, this Court still had to independently find that that definition was reasonable. And basically what the BIA held was sexual abuse of a minor is a term that is not given a statutory definition. So in those circumstances, under this Court's precedent in Barron-Medina, which we've already relied heavily on at 187F3rd at 1146, it says courts must interpret the term, quote, by employing the ordinary, contemporary, and common meaning of the words that Congress used. Now, what the BIA did then in coming up with the definition of sexual abuse of a minor, they relied on the fact that Congress wanted to give an expansive interpretation to this phrase sexual abuse of a minor. And that alone already counsels against giving it a limiting approach, because when sexual abuse of a minor was added by amendment a few years ago, in addition to rape, basically what this case is holding is that signaled Congress' intent to give it an expansive interpretation. But not only that, they looked at the Black's Law Dictionary to give these terms their ordinary meaning. And of note, the Court, in a slip of pen in page 3770, says that Black's Law Dictionary defines minor without reference to a specific age. So what that tells us is that, and also in a treaty this Court was applying the Taylor approach, which is at issue here, that holding couldn't be any clearer that minor need not be defined with reference to a specific age. So that would be our biggest rebuttal to defense counsel's argument that somehow because 38 States set the age of consent at 16 as opposed to California, which does it at 18, that that somehow takes us out of the realm of aggravated felony. And I think there's actually precedent for that. This Court in the Ombong-Corona-Sanchez case was defining what theft defense meant. And a similar argument was put forth by the defense there, that in most State jurisdictions, the intent to deprive property had to be permanent. This Court recognized that, but again said Congress wanted to give an expansive interpretation to the term theft, because it didn't just say theft. It said theft defense. And this Court, Ombong, ended up adopting a definition that said the deprivation can be permanent or temporary. So there is precedent in this Court for reading basically definitions that we're talking about today as not being limited by what allegedly the majority of States are doing. And also in a freedie, I would note, again, at Slip Opinion, page 3770, Black's Law Dictionary defines legal age as the same as age of majority, which is age 18, or when a person attains full legal rights. So it would seem to be under a freedie, this Court is basically saying that States have it within their wisdom to define the age of majority. The exact same statute is at issue in this case, as is at issue here, Cal Penal Code 261.5c. And another interesting point I think that can be gleaned from this case, there seems to be a strand going through defense counsel's argument as well that somehow force needs to be an element. The facts of a freedie were the defendant was 32 or, excuse me, 52 years old, and the victim was 17, just barely a year shy of the age of majority. He picked her up on the side of the road and paid her $60 to have sex with him. So that force was not an issue there, and that obviously did not keep this Court from finding that it was an aggravated felony. So on that alone, I believe this case does solidify the fact that the plus 16, as well as the increase in statutory maximum in this case, can be based on the 1999 conviction that this defendant incurred under Cal Penal Code 261.5c. But you have to concede, do you not, that this opinion has a measure of deference to the BIA? True. In this case, we have no matter of deference, right? Correct. And it would not be enough for us just to say, well, this case says what it says. Therefore, we're compelled to follow it and hold sane. The holding, whatever we do in this case, is going to be based upon our own whole cloth determination of what is an aggravated felony in this instance, is it not? Correct. And to the extent that there is any discussion whatsoever of deference, it solidifies the need for us to decide it without regard to that case as any authority whatsoever. It may be persuasive or it may be something, but it's not controlling. Correct. And I have no problems conceding that, Your Honor, because by definition this one that came out today is civil immigration. All right. All right. We understand each other. But when you start out by saying it's fatal to his position, it's persuasive enough. It's perhaps a rhetorical. Correct. All right. And the only thing I'll say before I go on to the other argument, though, again, even though there is some deference given, this Court still has to, in a free deed, and whenever an administrative agency's interpretation is at issue, this Court will still take an independent inquiry as to whether it's reasonable. Yeah. And basically, in a free deed, this Court cited to these other or, you know, noted these other sources, Black's Law and Dictionary, the idea that Congress wanted expansive interpretation. So for that reason, correct, we think it has very strong persuasive value. Very well. But maybe the term fatal should be reserved for the alternative argument, which is, as interesting as this issue is, this Court is free not to reach it. And why is that? Because we had a concession at the very beginning of the defense presentation that his 2002 conviction for lewd and lascivious act against a child under the age of 14 was, in fact, a crime of violence and an aggravated felony. And this Court doesn't just have to take counsel's word at it. It's a concession that's well taken, because in Barron-Medina, again, at 187F3rd at page 1147, this Court already held, in the specific context of a sentencing enhancement, a plus-16 enhancement under 201.2, that the exact same penal code, 288 sub a, was, in fact, sexual abuse of a minor. So that's a concession that's on good authority. Now, why do I think that this is a more, even a stronger argument? It's simply Well, wait. I recall counsel's discussion of timing, that he differentiates these two convictions on the basis of timing. Right. And I believe on a faulty premise, which I'd like to explain. All right. Go ahead. He's basically, in this case, the 1999 convictions were incurred, then the defendant was deported December 18th of 1999 pursuant to an immigration judge's order. Defense has no qualms with the validity of that deportation on this appeal. Then he gets the two 2002 convictions, after which he is deported or removed, subject to a reinstatement. And then he says, well, the legality of reinstatement is currently at issue. It is in front of this Court, the en banc proceeding in Morales v. Cierto. And so he says, and so the assumption is somehow the resolution of that case will matter, but it won't. And why do I say that? There's basically a case, Luna-Matalaga, probably not pronouncing it right, but we cite it in our cases. It's at 315F3rd, page 1224. That was a criminal sentencing context, again, the same as this one, 201.2. In that case, this Court held that the validity of an enhancement under 201.2 does not depend on the legality of the removal. It said the only thing that matters is the physical removal. And, in fact, this Court, it's well settled that the legality of a prior removal isn't even an element of the offense. This Court held that sitting en banc in the United States v. Alvarado-Delgado case, 98F3rd 492, back in 1996. If the legality of a prior removal isn't even an element under the crime, which must be proven beyond a reasonable doubt, how can it be relevant for purposes of sentencing? And it's not just that we're saying that in a vacuum. We have this case, Luna-Matalaga. And, in fact, it was over a dissent. Judge Thomas, if you read the dissent, even recognizes that he defines it as the government's position as being the legality of the removal is not important. So he knew what was at stake in that case. For better or for worse, that is binding law. It has not been overruled. It has not been distinguished. And so the reason I bring that up, we can talk about the intricacies of sexual abuse of a minor in all the 50 States. And it is definitely a question that is very weighty. But if this Court is looking for the easiest way to dispose of this case, I say you can do it with that 2002 conviction for lewd and lascivious, which without a doubt is a felony. This defendant got a three-year sentence for that. Baron Medina says it is sexual abuse of a minor for purposes of 201.2. And if the only thing that defendant's defense is hanging its hat on is that Morales has cared and might find reinstatements invalid, our position is even if that turns out to be the case, that won't affect this holding. The plain language of 201.2 doesn't use the word lawful removal. It simply says the defendant was removed subsequent to, and it lists the convictions. If there's no dispute that the qualifying conviction is met here, this Court can resolve the case on that issue. And the final thing I'd note, you know, there's Before you go on, you do not cite that case in your brief, do you? Luna Madalaga? Uh-huh. Oh, no, I believe we did, Your Honor. Well, I'm looking. Well, anyway, if you did, that's all I need to know. Okay. If you did, that's fine. You don't need to do it again. Okay. But it's pages 24 to 27 I just saw briefly. But the last thing I would say, Your Honor, there are two issues here. One is whether the statutory maximum was properly increased beyond 2 years. The other was, was the plus 16 valid? We made a point at page 19 of our brief, I think this also bears emphasizing, this defendant got an 84-month sentence. He got less than 10 years. Under 13, under the statute, 8 U.S.C. 1326b-1, a 10-year maximum is authorized simply by showing a prior felony, not even an aggravated felony. You only need to show the prior aggravated felony if the sentence increases from 10 years under 20. Here, without regard to the nuances of whether something is aggravated or not, there's no doubt that this defendant incurred prior felonies. And because he got an 84-month sentence, he was never subjected to an increase over that 10 years. And I think for that reason as well, this Court can affirm. And unless this Court has any further questions, I will submit. Thank you. Just to reply a little bit. All right. Come on. I wish you would come all the way from San Diego. Our response to Luna is in the reply brief on pages 13 through 18. But I want to clarify one thing. Luna absolutely does not hold that the legality of the reinstatement proceeding doesn't matter. The specific holding of Luna is that when there's a reinstatement, you look at the physical removal rather than the original order of deportation. That is the limited holding of Luna in all the cases it relies on. Because what there was is this challenge that when people were deported pursuant to the reinstatement, they would say, well, you can't use that. You have to use the original order. In all these cases, they were assuming that process was legal. And so if this Court in Morales-Esquerda finds that that procedure is illegal, it says if it didn't happen, ultra virus. All right. We'll go to the final matter. U.S. versus.
judges: Pregerson, Leavy, Beistline